In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2562

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL REESE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cr-01061—**Virginia M. Kendall**, *Judge.*

ARGUED OCTOBER 26, 2011—DECIDED JANUARY 13, 2012

Before RIPPLE and HAMILTON, *Circuit Judges*, and
MYERSCOUGH, *District Judge.*[*]

MYERSCOUGH, *District Judge.* On September 15, 2009,
a jury found Michael Reese, a supervising building in-
spector for the City of Chicago's Department of Buildings,
guilty of one count of conspiracy to commit bribery
(18 U.S.C. § 371) and two counts of making false state-

_____

[*] Of the Central District of Illinois, sitting by designation.

ments to federal agents (18 U.S.C. § 1001(a)(2)). In June 2010, the district court sentenced Reese to a total of 60 months' imprisonment—51 months' imprisonment on Count I and 9 months' imprisonment on each of Counts 2 and 3, to be served concurrently.

Reese appeals, arguing the district court erred by admitting testimony about the 2005 gift list of Beny Garneata, a City of Chicago businessman, and admitting the list itself. Reese also argues the court erred by barring the admission of recordings between Reese and Catherine Romasanta, one of the witnesses who testified against him, which contained self-exculpatory statements. Finally, Reese argues the court erred by holding him accountable for more than $117,000 in bribes (the court actually held him accountable for $112,500), which resulted in an eight-level increase to Reese's offense level under the United States Sentencing Guidelines.

Although the district court erred by admitting the 2005 gift list as a business record, the error was harmless. Further, the court did not err by admitting testimony about the gift list and barring Reese from introducing the recordings between Reese and Romasanta. Finally, the court did not err by holding Reese accountable for $112,500 in bribes. Therefore, we affirm.

## I. BACKGROUND

In December 2008, the Government charged Reese, a supervising building inspector in the City of Chicago's Department of Buildings, with one count of conspiracy to

commit bribery and two counts of making false statements to federal agents. The conspiracy count alleged that, between early 2005 and mid-December 2006, Reese conspired with David Johnson, a building inspector with the City of Chicago, Sorin Adrian Oros, a building contractor, and others known and unknown. According to the Government, Reese and Johnson accepted money from individuals, including Oros, and referred individuals to each other in exchange for providing certain services, such as issuing certificates of occupancy, expediting permit approvals, abating code violations, and obtaining unit change approvals.

A. Summary of the Evidence Presented at the September 2009 Trial

Reese's coconspirators testified at trial, including Johnson and Romasanta, who cooperated with the Government, and Oros, who was found guilty of bribery and testified under a grant of immunity. The Government also played for the jury several recordings between Reese and "Danny," the confidential informant, between Johnson and Danny, and between Reese and Johnson.

Johnson testified that over a number of years, he and Reese referred individuals to each other to provide certain official services in exchange for a bribe. These services included building unit changes, code violation changes, putting permits and plans through the system, and removing stop work orders. Sometimes Johnson and Reese shared the bribe money with each other.

Johnson introduced Greg Jackson, an investor and contractor, to Reese. In February 2007, Jackson told Johnson that Reese wanted $10,000 to take care of a project on South Prairie. (The district court instructed the jurors that they could only consider that testimony as context for the February 2007 recording and not for the truth of the matter asserted.) In a February 2007 recording between Defendant and Johnson, Reese told Johnson, "Make that motherfucker come up with that number." Johnson understood that to mean that Reese wanted Johnson to put pressure on Jackson to pay the $10,000. Reese also stated, "[T]hat's why I came in with high because I know this motherfucker he gonna be sitting." Johnson explained Reese was referring to the number that he gave Jackson on how much it would cost to "take care of the problem."

Johnson also testified that Reese introduced him to Beny Garneata, an expeditor and electrical contractor. In exchange for $4,000, Johnson helped Garneata get certain permits and plans through the system.

Oros testified that he paid Reese a bribe several times in exchange for Reese changing information in the City's computer system (also referred to as "mainframe changes") to reflect the number of units Oros had in his buildings. In 2005, access rights to the computer system were changed and only certain administrative personnel had the ability to edit, update, and delete information in the computer database. When Reese could no longer make the changes for Oros, Reese introduced Oros to Johnson, who knew an administrative assistant with

access to the computer system. Oros thereafter paid Johnson to have the changes made in the computer system. Oros also paid Johnson several times for obtaining zoning stamps.

In December 2006, Johnson and Oros were arrested when Johnson met with Oros to pick up $12,000 in exchange for getting zoning approvals on architectural plans. During the January 2007 conversation between Johnson and Reese, Johnson told Reese he had "two pieces" that he needed to get rid of, referring to the two architectural drawings Johnson had received from Oros. Reese asked Johnson if he wanted Reese to "holler at him," which Johnson understood to mean that Reese would get in touch with Oros about returning the drawings. Reese asked Johnson, "They done?" to which Johnson responded, "They done. Darryl got them stamped off at City Hall."

Romasanta, a former expeditor who worked for Garneata, testified that she took bribes from contractors and developers and passed them on to City inspectors, including Reese. (An expeditor is a private company or a person employed by a private company who represents the building owner or investor and helps the owner or investor obtain building permits more quickly.) Romasanta also testified that on one occasion, she handed Reese an easy permit application. Reese handed the documents to Johnson and told him "to go do his thing." Romasanta gave Reese $1,500, and Johnson returned with the approved application.

Romasanta testified about Garneata's practice of distributing gift cards to City officials at Christmas. Garneata

told Romasanta that they "needed to take care of the inspectors." Between 2003 and 2005, Romasanta saw a list reflecting gift cards for City inspectors. In 2005, Romasanta delivered a gift card to Reese. In 2006, Reese called Romasanta and asked her if Garneata was doing anything for inspectors that year.

Romasanta also testified about Garneata's hand-written 2005 gift list, which the district court admitted into evidence. One of the names on the 2005 gift list was "Insp. Reesse[sic]—$200." Romasanta identified the individuals named on the list, including Reese.

Dwayne Pierre-Antoine testified that in October 2005, he went to the building department regarding some building violations on his property. Pierre-Antoine explained the situation to Reese and asked him what he needed to do. Reese told Pierre-Antoine that he needed to speak to someone else. That individual, later identified as Johnson, spoke to Pierre-Antoine alone in Reese's office. Johnson told Pierre-Antoine that he had to pay a $4,000 fee to get the violations on his property removed. When Pierre-Antoine told Johnson he could not do that, Johnson asked him how much he had. Pierre-Antoine refused to pay anything. Pierre-Antoine was ultimately able to resolve the issues within two to three days for no cost. In November 2005, Pierre-Antoine filed a complaint with the United States Postal Inspection Service, which resulted in an investigation of City of Chicago employees accepting bribes in return for performing official acts related to their duties.

This evidence was further corroborated by the re-cordings of conversations between Reese and the con-

fidential informant, Danny. In October 2006, Danny called Reese looking to obtain a permit more quickly than usual. Reese told Danny he knew someone who could help Danny "get 'em pushed through." In November 2006, Reese told Danny that he might be able to talk to an inspector "and maybe he will let you work you know for a small fee." Reese gave Johnson's cell phone number to Danny, and Johnson ultimately provided Danny with a plumbing license letter of intent for $800.

Finally, the Government introduced a month-by-month summary of the number and duration of calls between Reese and his alleged coconspirators during 2005, 2006, and part of 2007.

After deliberating, the jury found Reese guilty on all three counts. In January 2010, the district court denied Reese's post-trial motions.

## B. Verdict and Sentencing

In June 2010, the district court sentenced Reese to 51 months' imprisonment on Count 1 and two 9-month concurrent terms on Counts 2 and 3, to run consecutive to Count 1. The district court held Reese accountable for $112,500 in bribes, which increased Reese's offense level by eight. *See* United States Sentencing Guidelines Manual (U.S.S.G.) § 2B1.1(b)(1)(E), (F) (providing for an 8-level increase where the amount of loss is more than $70,000 but $120,000 or less).

## II. DISCUSSION

On appeal, Reese argues the district court erred by: (1) allowing testimony about the gift card list and admitting the 2005 gift card list; (2) barring evidence of recordings between Reese and Romasanta during which Reese declined Romasanta's invitation to engage in illegal conduct; and (3) holding Reese accountable for $112,500 in bribes at sentencing, which resulted in an eight-level increase in Reese's offense level.

A. District Court Did Not Abuse Its Discretion by Admitting Testimony About the Gift List, and Admission of the Gift List as a Business Record Was Harmless Error

Reese argues the district court erred in admitting the 2005 gift list identifying Reese as a recipient of an improper payment and testimony about the list because (1) it was prejudicial Rule 404(b) evidence; (2) the 2005 gift list did not constitute a business record under Rule 803(6); and (3) admission of the 2005 gift list violated Reese's Sixth Amendment right to confrontation because the list's author did not testify at trial.

1. *Background Pertaining to the 2005 Gift List*

Prior to trial, the district court held that the Government could present certain other-acts evidence under Federal Rule of Evidence 404(b). This evidence included Romasanta's testimony about Garneata's practice of giving gift cards to City officials during the holiday

season, Romasanta delivering a $200 gift card to Reese in 2005, and Reese calling Romasanta in 2006 asking if he would receive a gift card that year. The court found that the evidence showed Reese's intent, as well as the interaction and ongoing relationship between Reese and Romasanta. Moreover, the court stated, "I do not think that it is anything but more conspiratorial behavior regarding this process of working together as a team to make sure that these individual inspectors were paid off."

The district court also, after hearing the testimony of Stephan Lille and the voir dire of Romasanta, admitted the 2005 gift list itself as a business record. Specifically, Lille testified that he had worked for M3 Plumbing, one of Garneata's businesses, from October 2006 to October 2007. In the summer of 2007, Lille found the 2005 gift list handwritten on a notepad in the office Lille shared with Garneata's wife.

During *voir dire*, Romasanta testified that, beginning in 2002, she and Garneata each would prepare lists of names and discuss them. Romasanta believed she saw Garneata's list in 2003. Romasanta recognized the 2005 gift list as being written in Garneata's handwriting and recognized the majority of names on the list. Romasanta did not know what Garneata did in terms of his record-keeping practices. Romasanta also did not know whether Garneata used the same list every year or made a new one. In fact, Romasanta testified she did not know whether Garneata actually wrote down his list or told someone else who to make the cards out to.

The district court admitted the list, finding that Romasanta identified the handwriting and the practice of passing gratuities. The court found the relevance of the evidence was not "overborne by prejudice" in light of strong testimony regarding Romasanta's contact with Reese and Johnson and the passing of bribes. The court did, however, redact the word "done" written next to some of the names on the list.

2. *Standard of Review Is for an Abuse of Discretion*

This court reviews the district court's decision to admit other-acts evidence and the admission of a document as a business record for an abuse of discretion. *See United States v. Price*, 516 F.3d 597, 603 (7th Cir. 2008) (Rule 404(b)); *United States v. LeShore*, 543 F.3d 935, 941 (7th Cir. 2008) (business record; also noting that the district court's interpretation of the rules of evidence is reviewed *de novo*).

The district court's evidentiary rulings are afforded special deference and will be reversed "[o]nly where no reasonable person could take the view adopted by the trial court." *United States v. Vargas*, 552 F.3d 550, 554 (7th Cir. 2008).

3. *District Court Did Not Abuse Its Discretion by Admitting Testimony Pertaining to the Gift List*

Federal Rule of Evidence 404(b) provides that evidence of a "crime, wrong, or other act is not admissible to

prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)[1]. Other crimes evidence is admissible, however, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*.; *see also United States v. Montani*, 204 F.3d 761, 767 (7th Cir. 2000). Whether other-acts evidence is admissible requires consideration of whether:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Baker*, 655 F.3d 677, 681-82 (7th Cir. 2011).

Reese argues the evidence did not constitute admissible conduct under Rule 404(b) because the conduct was fundamentally different from the allegations of bribery charged in the indictment. "[S]imilarity is

---

[1] Effective December 1, 2011, and after oral argument in this case, the amendments to the Federal Rules of Evidence went in effect. The changes to Rule 404 (b), Rule 803(6), and Rule 106 are not integral to our analysis. Therefore, we use the amended Rules herein.

relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent . . . . *The prior acts need not be duplicates of the one for which the defendant is now being tried.*" *United States v. Lloyd*, 71 F.3d 1256, 1265 (7th Cir. 1995) (alteration in original) (internal quotation marks omitted).

Here, the testimony regarding the gift list was relevant to show Reese's intent, as well as the relationship between Reese and Romasanta. The evidence that Reese called Romasanta in 2006 was particularly probative of Reese's intent and involvement in the conspiracy. That the gift card payments were made to "take care of the inspectors" was sufficiently similar to the illegal conduct charged in the indictment. *See Vargas*, 552 F.3d at 556 (explaining that other-acts evidence "was directed toward establishing [the defendant's] knowledge, and was sufficiently similar to the charged offense to be probative on that issue").

Reese also argues the district court erred by finding the probative value of the evidence outweighed the prejudice. *See* Fed. R. Evid. 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice"). Reese argues the evidence was highly prejudicial because payment in the form of holiday gifts was materially different from the illegal conduct charged in the indictment and this evidence was the only instance in which the Government could corroborate the testimony of a convicted, cooperating witness that an improper payment of any kind was made to Reese. Reese also notes

that that prejudice was not mitigated by a limiting in-
struction.

Although the evidence was prejudicial, it was not
unfairly prejudicial. *See, e.g., United States v. Andreas*, 216
F.3d 645, 665 (7th Cir. 2000) (noting that "probative evi-
dence is always prejudicial, but the question remains
whether it is unfairly so"). "Evidence is unfairly
prejudicial only if it will induce the jury to decide the
case on an improper basis, commonly an emotional one,
rather than on the evidence presented." *United States v.
Wantuch*, 525 F.3d 505, 518 (7th Cir. 2008); *see, e.g., Andreas*,
216 F.3d at 665 (finding no error in admitting evidence
where the evidence "was not so shocking, repulsive or
emotionally charged that its probative value was out-
weighed by its prejudicial effect").

Here, the testimony regarding the gift list, particularly
Reese calling Romasanta in 2006 and asking if he was
going to receive a gift card that year, was probative of
Reese's intent and not so prejudicial as to cause the jury
to decide the case on an improper basis. The resulting
prejudice of this evidence did not outweigh the proba-
tive value. Therefore, the district court did not abuse
its discretion by admitting the evidence. *See Wantuch*,
525 F.3d 505, 518 (7th Cir. 2008) (other crimes evidence
"outlined how the relationship of trust and cooperation"
developed between the coconspirators).

While the district court did not give the jury a limiting
instruction, the record does not reflect that defense
counsel requested one. *See, e.g., United States v. Suggs*,

374 F.3d 508, 517 (7th Cir. 2004) (a defendant who does not request a limiting instruction forfeits any argument that the court erred by failing to give a limiting instruction). Generally, this court reviews the failure to give an unrequested limiting instruction for plain error, but Reese does not argue plain error on appeal. *See, e.g.,* *United States v. Liefer*, 778 F.2d 1236, 1244 (7th Cir. 1985). Nonetheless, even without the limiting instruction, the evidence was not unduly or unfairly prejudicial. *See, e.g., United States v. Wilson*, 31 F.3d 510, 515 (7th Cir. 1994) (evidence not unduly prejudicial, even in absence of a limiting instruction, "because of its strong similarity and close temporal proximity to the charged crime").

4.  *Admission of the 2005 Gift List as a Business Record Was Harmless Error*

Reese next argues that even if testimony about the gift list was admissible under Rule 404(b), the gift list itself was inadmissible because (1) the 2005 gift list was not a business record; (2) no qualified witness testified to the accuracy and authorship of the 2005 gift list; (3) the 2005 gift list was more prejudicial than probative; and (4) the admission of the list violated Reese's Sixth Amendment right to confrontation because the author of the list was not called to testify. We agree that the district court erred by admitting the 2005 gift list as a business record but find that error was harmless. *See, e.g., United States v. Thornton*, 642 F.3d 599, 606 (7th Cir. 2011).

"A party establishes a foundation for admission of business records when it demonstrates through the testimony of a qualified witness that the records were kept in the course of a regularly conducted business activity, and that it was the regular practice of that business to make such records." *United States v. Given*, 164 F.3d 389, 394 (7th Cir. 1999); *see also* Fed. R. Evid. 803(6) (business record exception to the hearsay rule). A qualified witness need not be the author of the document but must have personal knowledge of the procedure used to create and maintain the document. *See id.*; *see also United States v. Muhammad*, 928 F.2d 1461, 1469 (7th Cir. 1991).

Although Romasanta testified that she knew that Garneata had a regular practice of giving holiday gift cards, she lacked knowledge of the practice of creating and maintaining the list. Romasanta testified that she was not sure whether Garneata actually wrote down a list, whether he made a list every year or used the same one, or what he did in terms of recordkeeping.

Romasanta's lack of personal knowledge concerning the recordkeeping meant that the list failed to satisfy what is now subsection (D) in Rule 803(6). The evidence also failed to satisfy subsections (C) ("making the record was a regular practice of that [regularly conducted] activity") and (E) (no indication of lack of trustworthiness). There was no adequate showing that it was a regular practice to make this sort of record, to maintain it, or to rely upon it. "The idea behind Rule 803(6) is that when a record is kept with sufficient regularity, the existence of an entry (or the absence of one) is good

evidence that the thing in question took place (or did not take place). Business records are reliable to the extent they are compiled consistently and conscientiously." *United States v. Ramsey*, 785 F.2d 184, 192 (7th Cir. 1986) (district court erred by admitting notes on businessman's calendar as business records, though error was harmless). The list here was found by accident in an abandoned notepad, not in regular files that were maintained, and Romasanta could not testify that it was the regular practice to make these lists, let alone maintain them and rely upon them. Therefore, the district court abused its discretion by admitting the 2005 gift list as a business record. *See, e.g., Collins v. Kibort*, 143 F.3d 331, 338 (7th Cir. 1998) (finding the witness was not qualified to testify about medical bills where he did not know anything about the hospital's billing practices).

Nonetheless, the error in admitting the 2005 gift list as a business record was harmless error. "Errors in the admission of evidence will be deemed to be harmless unless they had a substantial and injurious effect or influence on the jury's verdict." *Datamatic Servs., Inc. v. United States*, 909 F.2d 1029, 1033 (7th Cir. 1990) (internal quotations omitted).

Reese argues the error was not harmless because the list was the only documentary evidence supporting the existence of any improper payment to Reese. Reese further argues that the prejudice from the admission of the list was not mitigated by a limiting instruction.

However, Romasanta testified about Garneata's practice of giving holiday gift cards, testimony this court has found was admissible and not unduly prejudicial. The actual gift list itself was merely cumulative of that testimony.

Moreover, the evidence presented at trial overwhelmingly demonstrated Reese's participation in a conspiracy with Johnson and Oros. The testimony of Johnson—a cooperating witness—and Oros—who testified unwillingly and under a grant of immunity—was further corroborated by the telephone conversations between Reese and Danny and between Reese and Johnson, as well as the testimony of Pierre-Antoine, who testified about his experience with Reese and Johnson. In light of the evidence presented at trial, the admission of the actual 2005 gift list was harmless beyond a reasonable doubt. *See, e.g., Price*, 516 F.3d at 605 (finding that the district court's error in admitting the document as a business record was harmless where the jury "was presented with substantially similar evidence"); *United States v. Franco*, 874 F.2d 1136, 1141 n. 1 (7th Cir. 1989) (finding that even if the court erred in admitting the records, the error was harmless because of the substantial evidence of the defendant's role in the conspiracy).

Because we have concluded that the error was harmless, we need not determine whether admission of the 2005 gift list violated Reese's right to confront the author of the list. *Coy v. Iowa*, 487 U.S. 1012, 1021-22, 101 L.Ed.2d 857, 867, 108 S. Ct. 2798, 2803 (1988) (Confrontation Clause violations are subject to harmless-error review); *Thornton*, 642 F.3d at 606.

B.  The District Court Did Not Abuse Its Discretion by Excluding Recorded Conversations Between Reese and Romasanta

Reese also challenges on appeal the district court's exclusion of recorded conversations between Reese and Romasanta. The recordings were made in May, June, July, and December 2007, after Romasanta began cooperating with authorities and after the investigation became known. During the conversations, Reese declined Romasanta's invitations to engage in illegal conduct. Specifically, Reese either referred Romasanta to the appropriate supervisor or directed Romasanta to follow proper procedures.

On appeal, Reese argues that the district court should have admitted the recordings on the basis that (1) the recordings were related recordings under Rule 106; and (2) the refusal to allow Reese to cross-examine Romasanta regarding the recorded conversations violated Reese's Confrontation Clause right and right to a fair trial.

1. *Standard of Review Is for an Abuse of Discretion*

The district court's rulings on evidentiary issues are reviewed for an abuse of discretion. *United States v. McGee*, 408 F.3d 966, 981 (7th Cir. 2005). "A court's limitation on a defendant's cross-examination is reviewed for an abuse of discretion, but whether the limitation offends the confrontation clause is reviewed *de novo*." *United States v. Mokol*, 646 F.3d 479, 485 n. 4 (7th Cir. 2011)

(also noting that "[e]xposing witness bias directly implicates the Sixth Amendment, and is reviewed *de novo*").

2. *District Court Did Not Err by Excluding the Recordings*

Reese's own statements in the recording were hearsay when offered by Reese for the truth of the matter asserted. *See United States v. Davenport*, 929 F.2d 1169, 1175 (7th Cir. 1991) (noting that the defendants' statements, to the extent they were exculpatory, would not have been admissible at their trial because the statements were hearsay). Because we conclude that the district court did not err by concluding that Reese's statements were inadmissible, we do not need to address Reese's argument that Romasanta's statements were not admissible for their truth, but rather to give context to his statements.

On appeal, Reese argues the 2007 recordings between Reese and Romasanta nonetheless should have been admitted as related recordings under Federal Rule of Evidence 106. Reese did not argue this ground before the district court, although the Government raised Rule 106 in its motion to exclude the recordings. However, even if Reese has forfeited this issue by failing to raise it before the district court, the district court did not commit error, let alone plain error, by excluding the recordings.

Rule 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—

that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The purpose of the rule is "to prevent a party from misleading the jury by allowing into the record relevant portions of the excluded testimony which clarify or explain the part already received." *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996); *see also United States v. LeFevour*, 798 F.2d 977, 981 (7th Cir. 1986) (otherwise inadmissible evidence may be admissible under Rule 106 to correct a misleading impression or else the misleading evidence must be excluded). Rule 106 also applies to oral, nonrecorded statements. *Price*, 516 F.3d at 604.

To admit evidence under Rule 106, a court must find that the evidence is relevant to the issues of the case. *United States v. Velasco*, 953 F.2d 1467, 1474-75 (7th Cir. 1992). If the evidence is relevant, the court considers the following factors: whether (1) the proposed evidence explains the admitted evidence; (2) the proposed evidence places the admitted evidence in context; (3) admission of the proposed evidence will avoid misleading the trier of fact; and (4) admitting the proposed evidence will insure a fair and impartial understanding of all of the evidence. *Id.* at 1475; *see also United States v. Sweiss*, 814 F.2d 1208, 1211-12 (7th Cir. 1987).

Reese argues the recordings between Reese and Romasanta are relevant to whether Reese conspired to commit bribery because the recordings contain Reese's responses to Romasanta's request that he change permits and orders on her clients' properties. Reese also argues the recordings are relevant because they serve

to rebut the trust relationship the Government attempted to prove between Reese and his coconspirators, provide context to the recordings and phone records used by the Government, and explain the recordings that already had been introduced.

Even if the 2007 recordings between Romasanta and Reese were relevant to the issues in the case, those recordings were entirely separate and distinct from the admitted recorded conversations between Reese and Danny and between Reese and Johnson. "A statement admitted on 'completeness' grounds must be connected contextually to the previously introduced evidence, such that the exclusion of that statement is likely to create an incomplete, misleading, or distorted picture of the evidence." *Price*, 516 F.3d at 605. The 2007 recordings between Reese and Romasanta were neither connected contextually to any previously introduced statement or recording nor was admission of those recordings necessary to complete Reese's earlier statements to other individuals. Therefore, the district court did not abuse its discretion by refusing to admit the 2007 recordings between Romasanta and Reese. *See, e.g.*, *United States v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011) (finding that the testimony the defendant wanted admitted was "merely explanatory of his theory of the case" and not explanatory of or relevant to the admitted testimony).

3. *Exclusion of the Recordings Did Not Violate the Confrontation Clause*

Reese next argues the district court's decision to exclude the recordings and preclude defense counsel from cross-examining Romasanta about those recordings violated his confrontation rights and right to a fair trial. Reese argues the recordings would have cast doubt on Romasanta's veracity when she testified that Reese had a working relationship with Romasanta and Johnson in accepting bribes.

Reese did not raise this argument when the district court considered whether to admit the recordings, although he did make this argument in his post-trial motion. Even if Reese forfeited the issue, Reese cannot show the district court erred, let alone committed plain error, by refusing to admit the recordings. *See, e.g.*, *United States v. Wing*, 104 F.3d 986, 988 (7th Cir. 1997) (issue was forfeited where the defendant could have made a contemporaneous objection but instead raised the issue for the first time in his post-trial motion); *Thornton*, 642 F.3d at 605 (forfeited issues are reviewed for plain error).

The Confrontation Clause of the Sixth Amendment protects the defendant's right to face those who testify against him and to conduct cross-examination. *See McGee*, 408 F.3d at 974. However, "[t]he right to cross-examination is not unlimited; trial courts have wide latitude 'to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only

marginally relevant.'" *Id.* at 975, (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 89 L.Ed.2d 674, 683, 106 S. Ct. 1431, 1435 (1986)).

The district court did not err by limiting cross-examination here. The court imposed reasonable limits on Reese's cross-examination of Romasanta. Reese essentially sought to elicit evidence of his failure to engage in unlawful conduct during his cross-examination of Romasanta. Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment. *See, e.g., United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990); *United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985). The district court's requirement that Reese cross-examine Romasanta within the confines of the rules of evidence was, therefore, not improper. *See Lewis*, 641 F.3d at 785 (finding no violation of the Sixth Amendment where the defendant was given the opportunity to confront and cross-examine the agent but was "required to do so within the rules of evidence"). Moreover, the district court did not limit defense counsel's cross-examination regarding Romasanta's motives or bias, both of which are core Confrontation Clause concerns. *Mokol*, 646 F.3d at 485 (noting that a district court may restrict cross-examination on issues such as bias "so long as the defense still has an adequate opportunity to explore the witness's motives and biases"). Therefore, the district court did not err in preventing defense counsel from cross-examining Romasanta about the 2007 recordings.

C. District Court Did Not Commit Clear Error by
   Holding Reese Responsible for $112,500 in Bribes

Reese last argues the district court committed clear error by holding him responsible for more than $117,000 in bribes. However, although the presentence investigation report calculated the loss amount as $117,500, the district court reduced the loss amount to $112,500 after considering the reliability of the supporting evidence. Specifically, the court found that of the $10,000 the Government believed should be attributed to Reese for computer mainframe changes Reese made for Oros ($1,000 for each change), the court was "only going to attribute $5,000 to the mainframe changes, based upon the five properties that have been identified [by Oros] as changed." Sent. Tr. at 58.

In any event, Reese argues the district court erred by (1) including bribes that were unknown and unforeseeable to Reese, including the $12,000 bribe Johnson received from Oros, the $4,000 bribe Garneata paid to Johnson, and the $1,500 bribe Romasanta paid to Reese from developer Daniel Fema; (2) including the unsuccessful attempts to solicit bribes in the loss calculation; and (3) relying, in part, on the $99,497 in cash deposits by Reese between January 2002 and December 2008 and assuming the amount was the proceeds of illicit bribes.

1. *Standard of Review Is for Clear Error*

We review the district court's calculation for clear error. *United States v. Alaka*, 614 F.3d 368, 371 (7th Cir. 2010). A loss calculation is clearly erroneous if "we are

left with the definite and firm conviction that a mistake has been committed." *United States v. Carani*, 492 F.3d 867, 875 (7th Cir. 2007) (internal quotation marks omitted). "Guideline interpretations are questions of law, however, which we review *de novo*." *United States v. Gee*, 226 F.3d 885, 899 (7th Cir. 2000).

### 2. *District Court Did Not Err by Holding Reese Liable for Bribes Received by Reese's Coconspirators*

The district court held Reese responsible not only for the bribes he personally received but also for the bribes paid to Johnson by Oros, Garneata, and Danny. A conspirator is liable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B); *see also United States v. Bustamante*, 493 F.3d 879, 887-88 (7th Cir. 2007). A defendant does not have to "personally engage[ ] in or benefit from every transaction that resulted in" the loss. *Alaka*, 614 F.3d at 371.

The district court's finding that these payments were reasonably foreseeable and in furtherance of the conspiracy was not clearly erroneous. The evidence presented at trial showed an ongoing relationship between Reese and Johnson by which the parties would each provide services to individuals outside normal channels. Reese and Johnson mutually benefitted because of each other's ability to manipulate the system and referred individuals to each other for that purpose.

The payments made by Oros to Johnson were reasonably foreseeable to Reese and were in furtherance of

the conspiracy. Reese referred Oros to Johnson when Reese could no longer provide the system changes for Oros. The $12,000 payment that Reese specifically challenges on appeal is further supported by the conversation between Reese and Johnson in January 2007 when Reese offered to contact Oros about picking up some plans Johnson had stamped for Oros.

The other payments Reese specifically challenges on appeal also are supported by the evidence. The $4,000 payment by Garneata to Johnson was also foreseeable because, according to Johnson's testimony, Reese referred Garneata to Johnson to provide the necessary services. Additionally, Reese's relationship with Garneata was corroborated by the testimony of Romasanta.

Reese also specifically challenges the $1,500 payment Romasanta gave to Reese on behalf of Daniel Fema, claiming the payment was uncorroborated. (Reese claims on appeal this payment was $3,000, but the record reflects the payment was $1,500). Romasanta's testimony was corroborated by the phone contacts, showing a large number of phone contacts between Reese and Romasanta, and the testimony of the other individuals—Johnson, Oros, and Pierre-Antoine—supporting her testimony about how the conspiracy worked.

3.  *District Court Did Not Err by Holding Reese Responsible for Solicitations of Bribes*

Reese also challenges the district court's inclusion of the solicitation of a bribe from Pierre-Antoine ($4,000) and from Jackson ($10,000) in the calculation of the loss

amount. (Reese challenges the $10,000 solicitation as a "payment," but it was clearly a solicitation). At sentencing, however, the solicitation of a bribe is treated the same as a completed bribe. *See* U.S.S.G. § 2C1.1, cmt. background ("[S]olicitations and attempts are treated as equivalent to the underlying offense); *United States v. Muhammad*, 120 F.3d 688, 701 (7th Cir. 1997) (using the ascertainable benefit of an unsuccessful bribe to enhance a sentence); *United States v. Quinn*, 359 F.3d 666, 680 (4th Cir. 2004) ("For purposes of sentencing, there is no distinction between a solicitation of a bribe and a completed bribe").

The evidence presented at trial indicated that Reese solicited the $10,000 bribe from Jackson. Moreover, Johnson's solicitation of a bribe from Pierre-Antoine was foreseeable where Reese brought Johnson into Reese's office to talk to Pierre-Antoine. Therefore, the district court properly included these solicitations in the calculation of the loss amount.

4.   *District Court Did Not Err by Relying on Cash Deposits as Circumstantial Evidence*

Finally, Reese claims that the district court improperly relied upon the $99,497 in cash deposits between January 2002 and December 2008. Reese argues that he explained these deposits in his sentencing memorandum, noting that he operated a beauty salon and received rent in cash for properties he leased to others.

The district court did not include in the loss calculation the $99,497 in cash deposits presented as evidence

by the Government. The court merely pointed to those cash deposits as circumstantial evidence in support of the conspiracy between the parties. The court did not err by doing so.

In sum, the district court did not err by holding Reese responsible for a loss amount of $112,500, which raised Reese's offense level by eight levels.

AFFIRMED.