## In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2297

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ONDRAY McKNIGHT,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cr-00263-4—**Rebecca R. Pallmeyer**, *Judge*.

On Petition for Rehearing En Banc

DECIDED FEBRUARY 6, 2012

Before EASTERBROOK, *Chief Judge*, and POSNER, FLAUM, RIPPLE, MANION, KANNE, ROVNER, WOOD, WILLIAMS, SYKES, TINDER and HAMILTON, *Circuit Judges*.

On consideration of the petition for rehearing with suggestion for rehearing en banc filed by defendant-appellant and the answer of plaintiff-appellee, all of the

judges on the original panel voted to deny rehearing and a majority of the judges in active service voted to deny rehearing en banc. Judge Posner dissented from the denial of rehearing en banc and filed an opinion which was joined by Judges Kanne and Williams.

The petition for rehearing is denied.

POSNER, *Circuit Judge*, with whom KANNE and WILLIAMS, *Circuit Judges*, join, dissenting from denial of rehearing en banc. The appeal presents an important question that deserves the attention of the full court: the propriety of gratuitous jury instructions in criminal cases, which is to say instructions that do not address an issue in the case. Such instructions are apt to confuse jurors, and when as in this case they are proposed by a party rather than given on the initiative of the trial judge, they may be intended to confuse, and in the present case to undermine the efficacy of an instruction desired by the opposing party and given by the judge.

Before the trial in this drug conspiracy case began, the government filed a motion in limine to bar evidence or argument that would be likely in the government's view to incline the jury to acquit the defendant even if his guilt had been proved beyond a reasonable doubt—

what is called "jury nullification," a legitimate concern of prosecutors because acquittals cannot be appealed. One of the government's concerns arose from the fact that, as is typical in drug cases, the prosecution was intending to rely heavily, for proof of the defendant's guilt, on wiretap and other surveillance evidence and on evidence provided by informers and undercover officers, including evidence based on controlled buys by the informers. It claimed to be worried that jurors might think such investigative techniques illegal or improper, and therefore might vote to acquit the defendant even if they were convinced of his guilt. So as part of the motion in limine the government asked that the defense be barred from challenging the legality or propriety of those investigative techniques.

That part of the motion is only a page and a half long, and it provides no empirical or other grounding for believing that jurors would be apt to "nullify" on the basis of indignation at the use of such techniques. Concern is expressed from time to time that members of minority groups who believe themselves to be targets of police harassment would as jurors refuse to convict guilty defendants, but all the government said in support of its motion to prevent the defense in this case from making claims of "outrageous government conduct" is that there is an "increasing tendency to interject themes of 'government misconduct' into a defense strategy." The government presented no evidence to support the claim of an "increasing tendency," or indeed of any tendency, or to suggest that defense counsel might be planning to inject such "themes" into the trial of this case.

Nevertheless it certainly would be improper to permit defense counsel to challenge the propriety of the deceptive investigative techniques employed by the government in this case, for in fact they are entirely proper; and so the judge rightly granted the motion.

During voir dire, no juror was asked whether he or she had a problem with evidence obtained by such techniques, and during the trial the defense scrupulously obeyed the judge's order not to make an issue of the propriety of the government's investigative techniques. Yet at the instructions conference at the end of the trial the government pulled a rabbit out of its hat by unexpectedly asking the judge to instruct the jury that

> sometimes the government uses undercover agents and undercover informants who may conceal their true identities in order to investigate suspected violations of law. In the effort to detect violations of the law, it is sometimes necessary for the government to use ruses, subterfuges and employ investigative techniques that deceive. It is not improper or illegal for the government to use these techniques, which are a permissible and recognized means of criminal investigation. Whether or not you approve of such techniques, should not enter into your deliberations.

The judge gave the instruction—over the defendant's objection—verbatim.

The panel recognized that

> the giving of unnecessary instructions raises the distinct possibility of cluttering the instructions

taken as a whole and, consequently, deflecting the jury's attention from the most important aspects of its task. *See, e.g.*, *United States v. Hill*, 252 F.3d 919, 923 (7th Cir. 2001) ("Unless it is necessary to give an instruction, it is necessary not to give it, so that the important instructions stand out and are remembered."). There is also a possibility that singling out this aspect of the case might be interpreted by the jurors as at least indirect approval of the effectiveness of the Government's management of the investigation. The decision as to whether to give an instruction such as the one in question, of course, must be the product of an affirmative act of judicial discretion. Our difficulty here is that the district court did not elaborate on its reasons for giving the instruction.

These are sensible precepts; gratuitous instructions confuse, and should not be given. *Llaguno v. Mingey*, 763 F.2d 1560, 1569 (7th Cir. 1985) (en banc); *Heater v. Chesapeake & Ohio Ry.*, 497 F.2d 1243, 1249 (7th Cir. 1974); *Clark v. Burlington Northern, Inc.*, 726 F.2d 448, 452 (8th Cir. 1984); *Michaud v. United States*, 350 F.2d 131, 133 (10th Cir. 1965); 9C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2556, pp. 112-33 (3d ed. 2008). In *Llaguno*, a civil rights suit against police, we said: "The judge told the jury that in evaluating the defendants' behavior it should 'not use 20/20 hindsight,' and 'should consider the responsibility of the police to prevent crime, apprehend criminals, and to safeguard persons and property from criminal actions.' These in-

structions were not wrong in the sense of stating untruths, but they were gratuitous and prejudicial. The term '20/20 hindsight' is a derisory expression for an ex post facto judgment. The plaintiffs were entitled to ask the jury to make such a judgment, evaluating the conduct of the police long after the fact. And to remind the jury, quite unnecessarily one would have thought, that the police are responsible for protecting the public safety is to place the judge's thumb on the balance in favor of a class of defendants already regarded sympathetically by most jurors." 763 F.2d at 1569.

The panel in this case did not apply the precepts that it had enunciated. The district court had not just failed to "*elaborate* on its reason" for giving the instruction; it had given no reason; it had given an explanation devoid of reasons. And the instruction was indeed gratuitous, and so should have triggered the rule of the *Hill* case, quoted approvingly by the panel: "Unless it is necessary to give an instruction, it is necessary not to give it."

In urging the instruction, the government had not contended that something had occurred during the jury voir dire or the trial to suggest that one or more of the jurors disapproved of the government's investigative techniques, let alone would try to punish the government for using them. One member of the venire said during voir dire that law enforcement had taken advantage of her stepsister and coerced her into confessing in a murder investigation, but that she (the venire member) did not blame the police. The reference to coercion could encompass deceptive interrogation

techniques. But we don't know whether this juror was empaneled, and the government doesn't cite her remarks as a basis for the instruction.

This would be a different case were there any articulated reason, with some foundation in fact or theory, for believing that the jury might acquit a defendant whom it believed guilty, just because the government had used deceptive investigative techniques. All the government's lawyer said in support of the motion, repeating in slightly different words the same empty statement in its motion in limine, was that "some jurors have issues with the government's use of those techniques in general." He didn't say there was any indication that some jurors *in this case* had such issues. Nor did the district judge state or imply that she had noticed anything during the trial that would indicate a danger that some jurors had such issues. All she said was "I have given this instruction before. I don't think it's particularly problematic."

And so both the prosecutor and the judge treated the instruction as routine, as needing no supporting evidence either particular to the case at hand (for the judge said nothing about the facts of this case or the facts of any previous case in which she had given the instruction) or applicable to the generality of cases (perhaps evidence based on academic studies of juries). The implication was that the instruction is proper in *any* case in which the government relies on informers, or wiretapping, or some other investigative method that some jurors might question. The panel opinion implies that

the instruction can be given in any case in which such techniques are used.

A gratuitous instruction is likely to worry jurors, by making them think they must have missed something during the trial because the instruction addresses an issue that didn't come up at trial. Jurors might think the instruction *must* relate to some issue in the trial, or else it would not have been given; the logical candidate for such an issue in this case is the credibility of the wiretap and informer testimony. The jurors may have put 2 and 2 together and gotten—5: since the techniques are proper and legal, the evidence they produce must be true. That would not be a sound logical inference, of course, but it is how jurors might respond to the confusing instruction.

A related danger was that the instruction would undermine another instruction the judge gave: that Shawn Denton, a member of the drug conspiracy who after being arrested became the government's principal witness, was "hoping to receive benefits from the government[,] namely, a reduced sentence in this case" and that the jurors should "give the testimony of Mr. Denton such weight as [they] feel it deserves, keeping in mind that it must be considered with caution and great care." The testimony of a paid witness (paid with a lighter sentence—quite a valuable currency for criminals subject to the possibility of a very long sentence) should indeed be considered with caution. But a juror might think that since the use of deceptive investigative techniques is legal and proper, their fruits shouldn't be considered with suspicion.

All the panel says to counter this inference concerning interpretation of the challenged instruction is that Denton was not an undercover agent, and turned prosecution witness only after the government's investigation of the defendant was complete, and therefore the instruction about deceptive investigative techniques couldn't have been referring to him. But Denton had been apprehended as a result of surveillance, a deceptive investigative technique, and had assisted the prosecution in its investigation by interpreting code words in phone conversations that he had had with the defendant that the government had secretly recorded—interpretive activity that was certainly part of the government's pretrial investigation. It is unrealistic to suppose that the jury would have thought the "deceptive technique" instruction unrelated to Denton's testimony; and indeed it would have been wrong to think that.

It is no answer that, as remarked in the panel opinion, jurors are "presumed" to obey their instructions. All that this bit of boilerplate means is that if instructions are legally correct, clear, and balanced, a judgment can't be overturned by a challenge to them; they are fine. These instructions were not fine.

In evaluating the clarity of instructions we need to be realistic about the limits of comprehension of jurors, as the panel was when it said that "the giving of unnecessary instructions raises the distinct possibility of cluttering the instructions taken as a whole and, consequently, deflecting the jury's attention from the most

important aspects of its task." But the panel failed to follow through—to recognize that it is quite possible that the gratuitous instruction in this case was confusing and slanted the instructions in the government's favor, and that the district judge may not have realized this.

The obvious response to the defendant's complaint about the instruction would have been for the panel to order a limited remand to enable the district judge to explain more fully why she gave the instruction; her explanation that she had given it previously and didn't think it particularly problematic illustrates the difference between an explanation and a justification, as she failed even to indicate whether any or all of those cases had been ones in which the defense had tried to make an issue of the government's investigative methods.

No plausible justification for the instruction has yet been offered by anyone.

The panel did remark:

> There will be times when circumstances arising during trial will counsel in favor of giving such an instruction. Some of these occurrences may be perceptible to us from the trial record; others, such as the facial expressions of the jurors or similar manifestations of disapproval, will be apparent only to the trial judge. At times, circumstances grounded in recent local events or local culture, of which the trial judge is especially cognizant, similarly might make the giving of such an instruction pru-

dent. A trial court's obligation includes taking note of all such situations and acting to preserve the integrity of the record.

That's fine as a generality, but it is beside the point in a case such as this in which there is no indication that the trial judge discharged her "obligation"—no indication that she exercised an informed discretion in deciding to give the challenged instruction. A trial judge who gives no reason for a questionable ruling is not "acting to preserve the integrity of the record." To the presumption that jurors understand their instructions the panel has added an apparently unrebuttable presumption that trial judges have a good reason, even if secret, for overruling objections to instructions that appear to be gratuitous.