In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3285

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFFERY L. DICKERSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:10-cr-20091—**Michael P. McCuskey**, *Judge.*

ARGUED SEPTEMBER 20, 2012—DECIDED JANUARY 23, 2013

Before EASTERBROOK, *Chief Judge,* and MANION and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* In August 2010, Jeffery Dickerson sold several bags of crack cocaine to Debra Vankuiken in exchange for five guns. Based on that trade, a jury convicted Dickerson of knowingly possessing firearms in furtherance of drug distribution under 18 U.S.C. § 924(c). Dickerson appeals, contending that 18 U.S.C. § 924(c) does not cover such guns-for-drugs exchanges;

that the district court's jury instructions stating otherwise were given in error; and that a discrepancy between the offense date charged in the indictment and the date for which the government offered evidence at trial warrants reversal. For the reasons set forth below, we affirm.

## I.  Background

### A.  The Drugs-for-Guns Exchange

From 2008 until his arrest in September 2010, Dickerson regularly sold crack cocaine to Vankuiken in Kankakee, Illinois. In August 2010, Vankuiken approached Dickerson to make a purchase, but was short on cash. Dickerson proposed a trade: if Vankuiken could obtain guns, Dickerson would be willing to give her crack cocaine in exchange.

Later that month, Vankuiken took five stolen guns, which were unloaded, to Dickerson's Kankakee apartment. Dickerson agreed to accept the guns as payment for crack cocaine. Dickerson and Vankuiken then drove to a storage facility, where Dickerson left the guns in a rental unit. Finally, the two returned to Dickerson's apartment, where Dickerson gave Vankuiken several bags of crack cocaine to complete the trade.

On September 24, 2010, law enforcement officers with the Kankakee County Major Crimes Task Force arrested Vankuiken on suspicion of stealing the five guns. She agreed to cooperate with the officers, and directed them to Dickerson's storage unit, where they found a cache of weapons and accessories, including three machine-guns and two handguns. The officers then arranged for

Vankuiken to make a controlled purchase of crack cocaine from Dickerson. Under the officers' supervision, Vankuiken purchased $50 worth of crack.

On September 25, Task Force officers lawfully searched Dickerson's Kankakee apartment, where they recovered 25.6 grams of crack cocaine. That same day, officers executed a search warrant on a second Dickerson apartment, in the nearby town of Bourbonnais, Illinois. The officers recovered 100 grams of crack cocaine and a loaded Smith & Wesson revolver, located approximately three feet away from the drugs, at this second apartment.

### B.  The Indictment & Trial

A federal grand jury indicted Dickerson for three drug- and firearm-related offenses. In February 2011, the grand jury filed a Superseding Indictment containing a revised version of these three charges. Count 2 of the Superseding Indictment contains the charge at issue in this appeal:

> On or about September 24, 2010, [Dickerson] . . . did knowingly possess a machinegun [and a] . . . revolver . . . in furtherance of the crime of posses- sion of cocaine base ("crack") with intent to dis- tribute it as charged in Count 1 *and* the crime of distribution of cocaine base ("crack") in Kankakee County, Illinois in August of 2010. (emphasis added).

Count 2 also states that these charges, if proven, violate 18 U.S.C. § 924(c)(1)(A)(i), which provides for a 50-

month minimum sentence for persons who "possess[] a firearm" "in furtherance of" a drug trafficking crime, and 18 U.S.C. § 924(c)(1)(B)(ii), which provides for a 360-month minimum sentence if the firearm possessed is a machinegun.

The conjunction "and" in Count 2 in effect divides this count into two separate charges, regarding possession and distribution. Only the second of these two charges, which we have labeled "Count 2, Charge 2," is relevant to this appeal. The separate charges can be broken out as follows:

Count 2, Charge 1:   On or about September 24, 2010, [Dickerson] . . . did knowingly possess a machinegun [and a] . . . revolver . . . in furtherance of the crime of possession of cocaine base ("crack") with intent to distribute it as charged in Count 1.

Count 2, Charge 2:   On or about September 24, 2010, [Dickerson] did knowingly possess a machinegun [and a] . . . revolver . . . in furtherance of . . . the crime of distribution of cocaine base ("crack") in Kankakee County, Illinois in August of 2010.

Before the start of Dickerson's trial in June 2011, the government and Dickerson submitted proposed jury

instructions. The parties agreed on the following instructions, which we have labeled ¶¶ 1-2:

> ¶ 1:   A person possesses a firearm "in furtherance of" a drug crime if the firearm furthers, advances, moves forward, promotes, or facilitates a drug trafficking crime. The mere presence of a firearm at the scene of a crime is insufficient to establish that the firearm was possessed "in furtherance of" a drug trafficking crime. There must be some connection between the firearm and the drug trafficking crime.

> ¶ 2:   Some factors that you may consider in determining whether a firearm possession was in furtherance of a drug crime include, but are not limited to: (1) the type of firearm; (2) whether the firearm was stolen; (3) whether the firearm possession was legitimate or illegal; (4) whether the firearm was loaded; (5) the accessibility of the firearm; (6) the proximity of the firearm to drugs, drug profits, or materials used for drug trafficking; (7) the type of drug activity that is being conducted; and (8) the time and circumstances under which the firearm was found.

Jury instruction ¶ 1 appears to have been adapted from what was, at the time, a proposed set of pattern jury instructions for use in the trial courts of this circuit, and ¶ 2 appears to have been derived from the commentary

to these proposed pattern instructions. *See* Pattern Criminal Jury Instructions for the Seventh Circuit for 18 U.S.C. § 924(c)(1)(A) (2012). The court added a third instruction, offered by the government over Dickerson's objection, regarding how the possession of a gun could be "in furtherance of" the drug crime. This third instruction, which we have labeled ¶ 3, reads:

> ¶ 3:   When a defendant receives a gun in exchange for drugs, he takes possession of a firearm in a way that furthers, advances, and helps forward the distribution of drugs.

In its closing argument, the government offered two theories regarding how Dickerson "possessed" the guns "in furtherance" of a drug crime. First, the government argued that the revolver recovered at Dickerson's Bourbonnais apartment on September 25 furthered the controlled buy between Dickerson and Vankuiken on that date. This theory corresponds to Count 2, Charge 1, of the indictment. Second, the government asserted that the three machineguns and two other guns recovered from Dickerson's storage shed on September 24 furthered the August guns-for-drugs exchange with Vankuiken. This theory corresponds to Count 2, Charge 2, of the indictment.

Dickerson did not raise a claim of variance regarding Count 2, Charge 2, during his trial. In other words, he did not mention that his charged possession of a machinegun on or about September 24, used in furtherance of drug distribution in August, differed from the government's evidence on this charge, all of which concerned

events in August. We also note that Dickerson has not challenged Count 2 as duplicitous, either in the district court or on appeal.

The jury found Dickerson guilty on all three counts. Concerning Count 2, the jury found that one of the firearms that Dickerson possessed in furtherance of a drug crime was a machinegun. The court sentenced Dickerson to 360 months' imprisonment on Count 2, the mandatory minimum. With additional convictions and sentences on Counts 1 and 3, Dickerson faces a total sentence of 511 months' imprisonment.

## II. Discussion

Dickerson challenges his conviction under 18 U.S.C. § 924(c) on three grounds. First, he contends that the district court's jury instructions, specifically ¶ 3, presented an inaccurate statement of the law, which prejudiced Dickerson. Second, he contends that his dual convictions for selling drugs and, in his words, receiving guns as payment for the sale of drugs violate the doctrine of merger. Third, he claims that Count 2 of the indictment failed to allege an essential element of a charge under 18 U.S.C. § 924(c), specifically, that he possessed the firearms in August 2010, the month for which this count charges him with distribution of crack cocaine. We consider Dickerson's arguments in turn.

### A. Jury Instructions

We review *de novo* whether jury instructions accurately summarize the law, "but give the district court substantial discretion to formulate the instructions . . . [provided that the instructions] represent[] a complete and correct statement of the law." *United States v. Noel*, 581 F.3d 490, 499 (7th Cir. 2009) (quoting *United States v. Matthews*, 505 F.3d 698, 704 (7th Cir. 2007)). Our review can be thought of as involving two steps. First, we review the legal accuracy of a jury instruction *de novo*. *United States v. McKnight*, 665 F.3d 786, 790 (7th Cir. 2011) *reh'g and suggestion for reh'g en banc denied*, 671 F.3d 664 (7th Cir. 2012) and *cert. denied*, 132 S. Ct. 2756 (2012) *reh'g denied*, 133 S. Ct. 87 (2012). Second, if we determine that that the instruction is legally accurate at the first step, we then examine the district court's particular phrasing of the instruction for abuse of discretion. *Id.* at 790-91. We will reverse at this second step "only if it appears both that the jury was misled and that the instructions prejudiced the defendant." *Id.* at 791 (quoting *United States v. Curry*, 538 F.3d 718, 731 (7th Cir. 2008)).

We begin our review by noting that the challenged jury instruction accurately reflects this circuit's caselaw. Dickerson objects to the district court instructing the jury that "when a defendant receives a gun in exchange for drugs, he takes possession of a firearm in a way that furthers, advances, and helps forward the distribution of drugs." This instruction mirrors our holding in *United States v. Doody*, 600 F.3d 753, 755 (7th Cir. 2010). In that case, Alduff Doody sold powder cocaine to a con-

fidential informant who claimed not to have any cash, and instead gave Doody a pistol as collateral. We sustained Doody's conviction under 18 U.S.C. § 924(c), holding that, "when a defendant receives a gun for drugs, he takes possession of the firearm in a way that furthers, advances, or helps forward the distribution of drugs." *Doody*, 600 F.3d at 755. This holding is reflected almost verbatim in the district court's jury instruction to which Dickerson objects.

The Supreme Court has expressly declined to settle the issue of whether a guns-for-drugs exchange lies within the purview of 18 U.S.C. § 924(c). *See Watson v. United States*, 552 U.S. 74, 83 (2007) (stating that the view that "a drug dealer who takes a firearm in exchange for his drugs generally will be subject to . . . [this provision] may or may not prevail, and we do not speak to it today" (internal quotation marks omitted)). In light of the Supreme Court's deliberate silence on this issue, our holding in *Doody* is controlling precedent. In the courtrooms of this circuit, *Doody* is the law.

Dickerson recognizes this fact and urges us to revisit that holding. This court "will not reexamine a recent decision . . . unless given a compelling reason to do so." *Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 858 (7th Cir. 2001). Compelling reasons include legislative or regulatory changes, judicial decisions addressing related or analogous issues, changes in the social or economic context surrounding the decision, or other significant, new information. *Id.*

Dickerson does not offer any of these reasons to support his position. Instead, he offers semantics. He

contends that it is a drug dealer's agreement to accept a firearm—not that drug dealer's later possession of it—that facilitates a drug transaction. According to Dickerson, the transaction should be considered to have been completed by the time he physically possessed the firearm.

The problem with this argument is that it cannot get around the fact that, even when a drug dealer does not come into possession of the firearm until after the drugs were distributed, it is that later possession that makes the drug transaction possible. *See Doody*, 600 F.3d at 756. In distinguishing this court's definition of "possession" from Dickerson's favored interpretation, we are not merely parsing words. If Dickerson had agreed to accept the firearms, but later reneged on his agreement, refusing to take possession, it is hard to imagine that he would have allowed Vankuiken to keep the drugs. Hence, which item in the exchange happened to change hands first is not dispositive in determining whether the possession was in furtherance of the drug crime. *See United States v. Sterling*, 555 F.3d 452, 458 (5th Cir. 2009) ("[D]rug traffickers cannot escape liability [under 18 U.S.C. § 924(c)] simply by structuring their transactions to arrange for later delivery of the firearms.").

There are sound policy reasons why Congress would want to apply enhanced penalties whenever guns and drugs mix, regardless of the temporal order of the exchange. The presence of guns—even, as here, unloaded guns which were only present for part of the ex-

change—during a drug transaction may increase the likelihood of violence erupting in what are often already volatile situations. Congress may have been concerned that the combined presence of firearms and drugs increases the likelihood of violence occurring, above the sum of the likelihood of violence in a drugs-only situation plus the likelihood of violence occurring in a guns-only situation. *See Smith v. United States*, 508 U.S. 223, 240 (1993) ("When Congress enacted the [then] current version of § 924(c)(1), it was no doubt aware that drugs and guns are a dangerous combination.") This potential multiplicative effect could be present even in the exchange between Dickerson and Vankuiken, where the drugs and firearms components of the exchange occurred sequentially.

The logic undergirding 18 U.S.C. § 924(c) applies even where, as here, firearms are employed simply as a method of payment. Even when guns serve only an instrumental function, that situation could easily change, should the drug deal go south. *See id.* ("The fact that a gun is treated momentarily as an item of commerce does not render it inert or deprive it of destructive capacity. Rather, as experience demonstrates, it can be converted instantaneously from currency to cannon."). Indeed, Congress amended 18 U.S.C. § 924(c) in 1998 for the specific purpose of expanding the statute to cover passive possession of a firearm in furtherance of a covered felony. *See United States v. O'Brien*, 130 S. Ct. 2169, 2179 (2010) (noting that the 1998 addition of the "possession" prong to the statute was "a direct response to this Court's decision in *Bailey v. United States*,

516 U.S. 137 (1995) . . . that the word 'use' in the pre-amendment version of § 924 'must connote more than mere possession'" (citation omitted)).

In interpreting the "possession in furtherance" prong of 18 U.S.C. § 924(c), six of our sister circuits have reached the same conclusion as we did in *Doody*. *See United States v. Gardner*, 602 F.3d 97, 103 (2d Cir. 2010), *cert. denied*, 130 S. Ct. 3372 (2010); *United States v. Mahan*, 586 F.3d 1185, 1188 (9th Cir. 2009); *United States v. Dolliver*, 228 F. App'x 2, 3 (1st Cir. 2007) (per curiam); *United States v. Luke-Sanchez*, 483 F.3d 703, 706 (10th Cir. 2007); *United States v. Boyd*, 209 F. App'x 285, 290 (4th Cir. 2006); *United States v. Frederick*, 406 F.3d 754, 764 (6th Cir. 2005); *see also Sterling*, 555 F.3d at 458 (assuming without deciding that a guns-for-drugs exchange involves possession of a gun to further the sale of drugs). Along with our sister circuits, we consider bartering firearms for drugs, or vice versa, to be a sufficiently specific nexus between these two objects to constitute possession in furtherance of the drug sale. For the afore-mentioned reasons, we decline to break with our prece-dent. The interpretation of "possession in furtherance" articulated in *Doody* remains logically and legally sound. Given that the district court's jury instruction accurately reflects our holding in *Doody*, we conclude that it was legally accurate.

We now move to the second stage of our analysis, in which we inquire into whether the district court abused its discretion in its particular phrasing of this instruc-tion. *McKnight*, 665 F.3d at 79-91. Reversal is warranted

only if it appears that (i) the jury was misled and (ii) the instructions prejudiced the defendant. *Id.* In making these determinations, our review is limited to determining whether the instructions as a whole, i.e., ¶¶ 1-3, were sufficient to inform the jury of the applicable law. *Curry*, 538 F.3d at 731.

Dickerson accepts ¶¶ 1-2 of the jury instructions, but objects to ¶ 3. The district court phrased this third instruction using nearly identical language as that used in *Doody*. Rather than misleading the jury or prejudicing the defendant, this instruction accurately conveyed this circuit's caselaw to the jury. With the validity of ¶¶ 1-2 not at issue, we conclude that the district court did not abuse its discretion in offering these instructions.

\* \* \*

The conclusory-seeming nature of ¶ 3 suggests that the possibility of *Sandstrom* error may merit some discussion. *Sandstrom* error occurs where the particular phrasing of a jury instruction creates either a conclusive or a mandatory presumption in the minds of jurors. *See Sandstrom v. Montana*, 442 U.S. 510 (1979). Such errors violate the Fifth Amendment's requirement that the government prove every element of a criminal offense beyond a reasonable doubt. *Id.* at 524. It is important to note that Dickerson does not make a *Sandstrom* claim. Moreover, even if he had raised such a claim, we think that any *Sandstrom* error contained in ¶ 3 would be harmless. Despite the fact that Dickerson waived this argu-

ment,[1] and notwithstanding the harmlessness of any possible *Sandstrom* error, we believe that some discussion of this topic would be helpful, to provide guidance to lower courts in crafting instructions in similar cases.

A conclusive presumption exists where a trial court delivers a jury instruction that a reasonable jury could interpret as an irrebuttable directive to find a given element of a charged offense once convinced of a predicate fact or facts triggering the presumption. *Sandstrom*, 442 U.S. at 517. Such a directive forecloses

---

[1] While Dickerson does not expressly argue that ¶ 3 constitutes *Sandstrom* error, two of his statements at least hint at a constitutional challenge—albeit an undeveloped one—to ¶ 3 as establishing a conclusive presumption. In his opening brief, Dickerson asserts that "the judge's instruction 'When a defendant receives a gun in exchange for drugs, he takes possession of the firearm in a way that furthers . . . the distribution of drugs' compelled the jury to convict [him] if they found those facts to be true." He also objected to ¶ 3 during the jury instruction conference in the district court, claiming that this language "tak[es] that *Doody* case . . . and turn[s] it into a rule." Dickerson makes these brief statements without any further elaboration, e.g., without referencing concepts such as *Sandstrom* error, conclusive presumptions, or relevant caselaw. Assuming that these statements even imply a claim of *Sandstrom* error, such a claim would be waived. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." (citation omitted)).

independent jury consideration of whether the facts proved are sufficient to establish the relevant element of the charged offense. *Carella v. California*, 491 U.S. 263, 266 (1989) (per curiam). Where "the jury might have understood the presumption to be conclusive, . . . the instruction was constitutional error." *Id.*

We need not resolve the question of whether ¶ 3 contains a conclusive presumption, because, even if this instruction were deemed unconstitutional, the use of this potentially erroneous instruction would constitute harmless error under *Chapman v. California*, 386 U.S. 18 (1967). In assessing a claim of constitutional error, we are mindful that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). Constitutionally erroneous jury instructions are harmless where "the predicate facts are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact." *United States v. Parmelee*, 42 F.3d 387, 393 (7th Cir. 1994) (quoting *Carella*, 491 U.S. at 271 (per curiam) (Scalia, J., concurring)). "In many cases, the predicate facts conclusively establish [the element of the charge], so that no rational jury could find that the defendant committed [the former] . . . but did not [commit the latter]." *Rose v. Clark*, 478 U.S. 570, 580-81 (1986). In these cases, "the erroneous instruction is simply superfluous." *Id.* at 581.

Dickerson's case fits this mold precisely. We held in *Doody* that a guns-for-drugs exchange constitutes posses-

sion in furtherance for purposes of 18 U.S.C. § 924(c). 600 F.3d at 755. Importantly, we did not state that a district court was within its discretion in making such a finding, or that such a finding does not rise to the level of reversible error. Instead, we stated plainly that a guns-for-drugs exchange *is* possession in furtherance. *Id.* In other words, the predicate fact that a defendant traded drugs for guns conclusively establishes that the possession in furtherance prong of 18 U.S.C. § 924(c) is met. Thus, even if ¶ 3 could be characterized as involving a conclusive presumption, this possibly flawed wording merely would render the instruction superfluous. *See Rose*, 478 U.S. at 581.

Courts' concerns regarding *Sandstrom* error are motivated by the requirement that the government prove every element of the charged crime beyond a reasonable doubt. *Id.* at 580. That requirement, in turn, helps ensure that only the guilty are punished. *Id.* It follows that when a guilty verdict "reached in a case in which *Sandstrom* error was committed is correct beyond a reasonable doubt, reversal of the conviction does nothing to promote the interest that the rule serves." *Id.* Since the challenged instruction reflects our controlling *Doody* precedent, one cannot say that a guilty verdict potentially based in part on this instruction failed to meet this standard. Therefore, "[i]t would further neither justice nor the purposes of the *Sandstrom* rule to reverse a conviction in such a case." *Id.* at 581-82. If any *Sandstrom* error in ¶ 3 may be found, such error is harmless.

While we find that the district court accurately summarized the law in this circuit, acted within its discretion in promulgating this instruction, and did not commit any non-harmless *Sandstrom* error, we also are mindful not to endorse the district court's particular phrasing of ¶ 3. Trial courts should craft jury instructions so as avoid wordings that could be interpreted as creating conclusive or mandatory presumptions. In this particular case, Dickerson waived any claim regarding *Sandstrom* error and, even if he had not done so, the district court's use of ¶ 3 amounts, at most, to harmless error. Still, in the future it would behoove the courts of this circuit to avoid phrasings that even raise the specter of *Sandstrom* error. In some circumstances, instructing a jury that it may consider whether a firearm was used as an object of barter in a drug exchange as a factor in determining whether the firearm was possessed in furtherance of the drug crime may be more appropriate than the language used here. *See* Committee Comment to Pattern Criminal Jury Instructions for the Seventh Circuit for 18 U.S.C. § 924(c)(1) (2012) (second paragraph of comment to the "definition of 'in furtherance'" instruction). For purposes of this case, however, it suffices to say that *Doody*'s direct holding that such an exchange constitutes possession in furtherance makes this inference overpowering. *Cf. Rose*, 478 U.S. at 581.

## B. Dickerson's Merger Defense

Dickerson argues that his conviction under 18 U.S.C. § 924(c) following these jury instructions, when coupled

with his conviction for the baseline offense of drug trafficking, violates the doctrine of merger. *See United States v. Gaddis*, 424 U.S. 544, 547 (1976) (holding that a defendant cannot be convicted of both robbing a bank and receiving the proceeds of that robbery). Dickerson is mistaken, however, in viewing his convictions for drug trafficking and possession of a firearm in furtherance of drug trafficking as two sides of the same coin, akin to being punished for committing a criminal act and receiving the proceeds of that act. Instead, 18 U.S.C. § 924(c) punishes a harm not covered by the standard drug trafficking statute. Dickerson's decision to receive his payment in the form of guns increases the potential for violence by introducing a deadly weapon into a situation in which violence is not infrequent. Moreover, while the doctrine of merger typically applies where "Congress . . . did not intend for pyramiding of penalties," *United States v. Fleming*, 504 F.2d 1045, 1052 (7th Cir. 1974), a simple reading of 18 U.S.C. § 924(c) shows that the statute's very purpose was to enhance the combined penalty for certain drugs-plus-guns offenses, above the sum of the penalties for the separately committed drug and gun crimes. *See Harris v. United States*, 536 U.S. 545, 576 (2002) (noting that the statute's "penalty range becomes harsher" for proscribed conduct involving both drugs and guns). The heightened potential for violence when guns and drugs mix, as discussed above, provides a convincing rejoinder to Dickerson's claim that his conviction violates the doctrine of merger.

### C. Variance between the Indictment and the Evidence Offered at Trial

Dickerson also challenges his conviction under Count 2 for knowing possession of a machinegun "on or about September 24, 2010," in furtherance of drug trafficking in August 2010. This subsection of this count is labeled Count 2, Charge 2, *supra*. Evidence adduced at trial indicates that Dickerson's machineguns remained in his storage unit from the time he received them from Vankuiken in August until the police discovered them on September 24. Thus, a more precisely worded indictment would have inserted August 2010 as the relevant date in both elements of this charge.

Dickerson argues that this discrepancy in the two dates calls into question the legal sufficiency of his indictment, and directs us to caselaw concerning the omission of an essential element in an indictment. We think that his argument is better characterized as a variance claim. A variance occurs "when the facts proved at trial differ from those alleged in the indictment." *United States v. Longstreet*, 567 F.3d 911, 918 (7th Cir. 2009). A difference between the date charged in an indictment and the date proven at trial is "a classic variance, which does not change the nature of the crime alleged." *United States v. Krilich*, 159 F.3d 1020, 1027 (7th Cir. 1998). We also classify as a variance a situation in which the scope of the indictment is broader than that of the elements proven at trial. *See United States v. Willoughby*, 27 F.3d 263, 265 (7th Cir. 1994). The circumstances here bear a resemblance to both of these forms of variance. Whether

one views the discrepancy between Count 2 and the evidence offered at trial as the substitution of one date for another, as in *Krilich*, or as involving the proof of a narrower element—i.e., the specific date of Dickerson's firearm possession—in place of the broader "on or about" language in the indictment, similar to *Willoughby*, this discrepancy is properly categorized as variance.

Variance claims are subject to harmless error review. *United States v. Thompson*, 23 F.3d 1225, 1230 (7th Cir. 1994). To prevail, Dickerson must show both (i) that the evidence presented at trial did not support the jury's verdict on Count 2, and (ii) that the variance prejudiced him. *United States v. Dean*, 574 F.3d 836, 842 (7th Cir. 2009). Thus, we treat a claim of variance as a challenge to the sufficiency of the evidence. *United States v. Hewlett*, 453 F.3d 876, 879 (7th Cir. 2006). In evaluating such a claim, we view the evidence in the light most favorable to the government. *Id*. We will "overturn a conviction only if the record contains no evidence from which a reasonable juror could have found the defendant guilty." *Longstreet*, 567 F.3d at 918.

An imprecise date alleged in an indictment generally constitutes harmless variance, unless a specific date is an essential or material element of the alleged offense. *United States v. Auerbach*, 913 F.2d 407, 411 (7th Cir. 1990). The date of the alleged crime is considered essential or material where the precise date is "necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *United States v. Cina*, 699 F.2d 853, 859 (7th Cir. 1983). This level of precision is not needed

here; Dickerson's actions were just as unlawful in August 2010 as they were in September. Because the precise date was not a crucial component of the charge, we think Dickerson's action in August 2010 could fairly be considered part and parcel of this charge. *See United States v. Synowiec*, 333 F.3d 786, 790 (7th Cir. 2003).

Where, as here, the date is not an essential or material element of the charged offense, "it is generally sufficient to prove that the offense was committed on any day before the indictment and within the statute of limitations." *United States v. Leibowitz*, 857 F.2d 373, 378 (7th Cir. 1988). We have applied this general rule in cases where the interval between the date in the indictment and the date for which the prosecution offered evidence at trial was longer than in the instant case. *See Krilich*, 159 F.3d at 1027 (finding a difference of over one year between the two dates to be harmless variance); *Auerbach*, 913 F.2d at 411-13 (variance of no less than two months is not sufficient to reverse). Consistent with this caselaw, we find the evidence presented at Dickerson's trial sufficient to support the jury's verdict, the discrepancy between these two dates notwithstanding.

Neither did this variance prejudice Dickerson. The use of the phrase "on *or about* September 24, 2010" (emphasis added), in Charge 2 placed Dickerson on notice that the government could introduce evidence regarding alleged activities on dates other than September 24. *Leibowitz*, 857 F.2d at 379 ("Where the indictment alleges that an offense occurred 'on or about' a certain date, the defendant is deemed to be on notice that the charge is

not limited to a specific date. He therefore cannot make the requisite showing of prejudice simply on the fact that the government has failed to prove a specific date."). The inclusion of this "on or about" designation in the indictment should have signaled to Dickerson that the indictment date was approximate and subject to reasonable variation. *United States v. McKinney*, 954 F.2d 471, 480 (7th Cir. 1992). Dickerson has not argued that this variation impeded his ability to present his defense or otherwise prejudiced him, and we fail to see how it could have done so.

Since the variance between the date listed in Count 2 of the indictment and the date for which the government offered evidence at trial was harmless, dismissal on this charge is not warranted.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment.