In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-2463

JAVIER REYES,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-5528 — **Harry D. Leinenweber**, *Judge*.

_____

ARGUED NOVEMBER 9, 2020 — DECIDED MAY 24, 2021

_____

Before SYKES, *Chief Judge*, and HAMILTON and BRENNAN, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Petitioner Javier Reyes was convicted in 2005 of several federal crimes stemming from the armed robbery of a credit union. One conviction was for brandishing a firearm in furtherance of a "crime of violence." He was also sentenced for being a career offender because his criminal history included multiple convictions for "crimes of violence." Since Reyes was convicted, the Supreme Court has

issued a series of decisions interpreting statutory definitions of "crime of violence," holding that so-called residual clauses in several statutes are unconstitutionally vague. In 2016, Reyes brought this second collateral attack under 28 U.S.C. § 2255, asserting that this emerging body of case law had rendered his conviction and sentence unconstitutional. As the case law in this area developed, Reyes sought to supplement and modify his § 2255 motion to take advantage of new decisions.

The district court denied relief but issued a certificate of appealability on whether the conviction for brandishing a firearm violated the Constitution because the statute of conviction incorporates a problematic definition. The threshold inquiry on this question is which crime or crimes the jury was instructed to consider as a "crime of violence" upon which the brandishing conviction could be based. Because the jury was properly instructed, we affirm. The government would have us affirm on procedural grounds, but we decline to do so.

I.  *Factual and Procedural Background*

   A.  *Events and Law Before 2015*

Javier Reyes worked as a loan officer at a credit union in West Chicago, Illinois. In August 2004, he was fired. He soon hatched a plan to rob the credit union by relying on inside information he had gleaned as an employee. He pitched the plot to four others, who agreed to commit the robbery while Reyes was on vacation in another state, providing him with an alibi.

Reyes' co-conspirators robbed the credit union on the morning of August 23, 2004. During the robbery, one of the robbers brandished a handgun that Reyes had provided.

After the robbery, Reyes' co-conspirators decided to cut him out, refusing to share any proceeds with him.

This proverbial falling out among thieves paled in comparison to the federal prosecution that followed. Reyes' four co-defendants pled guilty, and three of the four testified against him at trial. Reyes was convicted of three federal crimes: conspiracy to commit robbery in violation of 18 U.S.C. § 371 (Count I); bank robbery in violation of 18 U.S.C. § 2113(a) (Count II); and brandishing a firearm in furtherance of a crime of violence, the robbery, in violation of 18 U.S.C. § 924(c)(1)(A) (Count III).

At sentencing, the district court applied the Sentencing Guidelines' career offender enhancement in U.S.S.G. § 4B1.1 (2005). This provision may apply if, among other things, the offender has a history of convictions for "crimes of violence" and is convicted of a new "crime of violence." *Id.*; see also U.S.S.G. § 4B1.2 (2005) (defining "crime of violence"). This enhancement applied to Reyes because, the sentencing court assumed, his prior convictions for burglary, voluntary manslaughter, and attempted murder under Illinois state law qualified as crimes of violence. Reyes appealed on grounds not at issue here, and we affirmed his convictions. *United States v. Reyes*, 542 F.3d 588 (7th Cir. 2008). Reyes filed a first § 2255 motion in 2009 alleging ineffective assistance of counsel. The district court denied relief, and we denied a certificate of appealability.

B. *Legal and Procedural Developments in 2015 and Later*

Reyes filed this second § 2255 motion in the wake of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). *Johnson* examined the definition of "violent felony"

in 18 U.S.C. § 924(e)(2)(B). Under this statute, a felony is "violent" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another" or is one of several enumerated offenses. The statutory definition also includes a so-called "residual clause," which defines as violent any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Johnson*, 576 U.S. at 594, quoting 18 U.S.C. § 924(e)(2)(B)(ii). The Court held that the residual clause is so vague that it violates defendants' Fifth Amendment right to due process, though the other definitions of violent felonies, using elements and enumerated crimes, stood intact. *Id*. at 606.

Reyes, represented at the time by counsel, filed this second § 2255 motion arguing that *Johnson* should apply to the Sentencing Guidelines. The career offender enhancement that was applied to Reyes at his sentencing included an identical residual clause in its definition of "crime of violence." U.S.S.G. § 4B1.2(a)(2) (2005); see generally 83 Fed. Reg. 65400, 65407–65412 (Dec. 20, 2018) (explaining evolution of definition before and after *Johnson* and further proposed guideline amendments). Reyes reasoned that his prior convictions for various Illinois felonies would not qualify as crimes of violence without the vague residual clause, so that the career offender enhancement should not have applied. We found that Reyes' proposed extension of *Johnson* met the minimum criteria for a second or successive collateral attack in 28 U.S.C. § 2255(h)(2). We granted his application to file his successive § 2255 motion and authorized the district court to consider his claims.

A month later, Reyes filed a pro se "abridged motion to vacate, set aside, or correct" his original conviction pursuant

to § 2255 with the appellate panel. This proposed amendment sought to add a new basis for relief: that Reyes' conviction for brandishing a firearm during a crime of violence was unsound because the brandishing statute, 18 U.S.C. § 924(c), also incorporates the same residual clause in defining which offenses count as predicate "crimes of violence." § 924(c)(3)(B). Reyes argued that neither bank robbery nor conspiracy can qualify as a crime of violence if the residual clause falls, so that his conviction based on his colleague's brandishing of a firearm during a "crime of violence" was unconstitutional. We concluded that, once we had ruled on whether to accept an application for a successive § 2255 motion, we did not have jurisdiction to reconsider amendments or supplements. We instructed Reyes to file his amendment with the district court, which he did.

While Reyes' motion was pending in the district court, we extended *Johnson* to the Guidelines, holding in *United States v. Hurlburt*, 835 F.3d 715, 725 (7th Cir. 2016) (en banc), that the residual clause in the career offender guideline was unconstitutionally vague. Soon after that, however, the Supreme Court disagreed, abrogating *Hurlburt* and finding that the Guidelines are merely advisory and therefore cannot be unconstitutionally vague. *Beckles v. United States*, 580 U.S. —, 137 S. Ct. 886, 892 n.2 (2017). Counsel for Reyes then withdrew.

Six months after *Beckles* was decided, Reyes, now acting pro se, moved pursuant to Rule 15 to amend his § 2255 motion to return to his claims that under *Johnson* and its progeny, neither bank robbery nor conspiracy counts as a crime of violence, so that his brandishing conviction was unconstitutional. The district court granted these motions to amend and ordered the government to respond to Reyes' filings. The

Supreme Court then decided another "crime of violence" case, *Sessions v. Dimaya*, 584 U.S. —, 138 S. Ct. 1204 (2018), which extended *Johnson*'s logic to another statutory use of a functionally identical residual clause in the Immigration and Naturalization Act. See 8 U.S.C. § 1101(a)(43)(F), referring to 18 U.S.C. § 16.

On May 28, 2019, the district court denied Reyes' § 2255 motions. The court acknowledged that Reyes had raised two distinct theories, but it squarely discussed only the sentencing issue in its opinion, holding that Reyes' motion was foreclosed by *Beckles*. Less than a month later, the Supreme Court held that *Johnson* applied to the residual clause in the definition of "crime of violence" in § 924(c)(3) as well. *United States v. Davis*, 588 U.S. —, 139 S. Ct. 2319, 2336 (2019). Before the district court closed the case, Reyes filed multiple supplements regarding *Davis* arguing that his brandishing conviction cannot stand. The district court concluded that *Davis* did not apply. Reyes moved the district court to reconsider, claiming that the jury instructions given in his trial contravened *Davis*. The district court then issued a certificate of appealability on the *Davis* issue, including the allegedly erroneous jury instructions.

II. *Legal Standard*

A federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). When reviewing the denial of a federal prisoner's § 2255 motion, we review the district court's legal conclusions de novo. *Martin v. United States*, 789 F.3d 703, 705 (7th Cir. 2015). As a general rule, moreover, if a jury is instructed on

alternative theories of guilt and returns a general verdict that may have relied on a legally invalid theory, the verdict must be set aside upon a timely challenge. *Sorich v. United States*, 709 F.3d 670, 673 (7th Cir. 2013), citing *Yates v. United States*, 354 U.S. 298 (1957).

III. *Analysis*

Notwithstanding this case's convoluted procedural history, the question on the merits is straightforward. Reyes now asserts only that his conviction for brandishing was based on conspiracy being a crime of violence, but that conspiracy is not a crime of violence within the meaning of 18 U.S.C. § 924(c). Reyes' entry point for that claim is his contention that the jury instructions explaining a co-conspirator's vicarious liability incorrectly instructed the jury to convict him of the § 924(c) charge if the brandishing happened in furtherance of the robbery (which is a crime of violence) *or* in furtherance of the substantive crime of conspiracy. Because conspiracy is not a crime of violence, he reasons, a general verdict rendered pursuant to these alternative options would run afoul of *Yates v. United States*. (The indictment itself properly tied the § 924(c) brandishing charge to only the robbery charge, not the conspiracy charge, and Reyes does not contest the point.)

The government offers two reasons why dismissal was proper. First, as a matter of procedure, the government argues that Reyes needed but did not obtain appellate permission to amend his § 2255 motion after we allowed the application to proceed under 28 U.S.C. § 2255(h). Second, on the merits, the government argues that Reyes is wrong about the jury instructions and that in fact they clearly distinguished between conspiracy and § 924(c) and tied § 924(c) liability to only the robbery. The government's merits argument carries the day,

so we address that first. We conclude by explaining why we see no fatal procedural defect, and in doing so we hope to dispel some confusion for parties and district courts entertaining § 2255 motions in a rapidly shifting legal environment.

A. *Merits*

We affirm on the merits. Reyes claims that the jury instructions were unduly confusing because they conflated vicarious liability under *Pinkerton v. United States*, 328 U.S. 640 (1946), when co-conspirators commit additional crimes in furtherance of the conspiracy, and § 924(c)'s element requiring that the firearm be brandished in furtherance of a "crime of violence." According to Reyes, the jury was instructed to consider conspiracy as a crime of violence that could serve as a foundation for the § 924(c) brandishing charge. We read the instructions differently. The district court properly and separately instructed the jury on both *Pinkerton* and § 924(c).

Given the twisting path that "crime of violence" doctrine has taken over the past few years, it is best to recount where things stand now before addressing the specific jury instructions in detail. The government concedes that criminal conspiracy is not a crime of violence under the nearly identical definition of "crime of violence" in the Guidelines. See *D'Antoni v. United States*, 916 F.3d 658, 665 (7th Cir. 2019). And Reyes now concedes on appeal that bank robbery committed in violation of § 2113(a) is a crime of violence under § 924(c) even after *Davis* because bank robbery meets the elements clause in the statutory definition. See *United States v. Williams*, 864 F.3d 826, 829–30 (7th Cir. 2017). Thus, if the jury was instructed that the robbery was the sole predicate "crime of violence" that could trigger liability for the brandishing offense, then there was no error. On the other hand, if the jury

instructions permitted the jury to treat conspiracy as the crime of violence supporting the § 924(c) brandishing charge, then the conviction could be legally vulnerable and we would need to consider next whether Reyes was prejudiced by any confusing or overbroad instructions.

Reyes' attempt to read the *Pinkerton* instruction as a § 924(c) instruction founders on its text. The judge's instruction paralleled this circuit's then-operative pattern jury instructions for conspiracy. See Seventh Circuit Pattern Criminal Federal Jury Instructions § 5.09, at 73 (1998)**.** Though our pattern instructions are not "holy writ," they do "reflect the collective experience of the judges and lawyers who crafted them and can serve as a helpful starting point." *United States v. Edwards*, 869 F.3d 490, 500, 497 (7th Cir. 2017). Reyes does not provide any reason to disregard this collective experience, even though this pattern instruction explicitly referred to the interaction between *Pinkerton* and § 924(c). Seventh Circuit Pattern Criminal Federal Jury Instructions § 5.09 at 73 (1998), summarizing *United States v. Chairez*, 33 F.3d 823, 826–28 (7th Cir. 1994).

In any event, the *Pinkerton* instruction here allowed the jury to convict Reyes for robbery and brandishing based on his co-conspirator's liability for those crimes. That is, if the jury found beyond a reasonable doubt that the co-conspirators committed crimes that were foreseeable and in furtherance of their conspiracy with Reyes, then they should convict Reyes for those other crimes. This particular instruction addressed only the latter prong in detail:

> A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was

> committed and if the offense was committed in furtherance of and as a foreseeable consequence of the conspiracy.
>
> Therefore, if you find Mr. Reyes guilty of the conspiracy charged in Count One and if you find beyond a reasonable doubt that while he was a member of the conspiracy, his fellow conspirators committed the offenses in Counts Two and Three [robbery and brandishing, respectively] in furtherance of and as a foreseeable consequence of that conspiracy, then you should find him guilty of Counts Two and Three.

That is an accurate description of how Reyes could be found vicariously liable for his co-conspirators' actions under *Pinkerton*. Critically, the instruction did not treat Reyes' conspiracy conviction as a predicate for *his colleagues'* brandishing of the firearm. The same is obviously true of Count Two, the robbery count, which was treated identically to brandishing in this instruction. That the brandishing (and robbery) occurred in furtherance of the conspiracy was a necessary but not sufficient condition for Reyes' conviction under § 924(c). This instruction explained that the government still had to prove beyond a reasonable doubt that Reyes' colleague "committed" the Count Three offense, that is, that he brandished the gun in furtherance of a crime of violence.

The instructions set forth the substantive elements for § 924(c) elsewhere, instructing the jury to convict Reyes under § 924(c) only if one of the robbers brandished "a firearm *during and in relation to the robbery*." (Emphasis added.) These instructions were not erroneous. They permitted conviction for

§ 924(c) only if the gun was brandished in furtherance of the robbery itself, not merely in furtherance of a conspiracy.

Reyes says that the district court should have combined the *Pinkerton* and § 924(c) instruction—that the jury should have been instructed as to the elements of two federal crimes (robbery and brandishing) *and* conspiracy liability in one breath. Or maybe that the district court should have laid out a multi-prong decision tree as a separate instruction. But the fact that Reyes can come up with another way of instructing the jury does not mean that the trial court was required to do so. Putting aside the question of whether Reyes' new proposals would actually have been clearer, the district court had ample discretion to describe separate questions correctly in distinct instructions. See *United States v. Dickerson*, 705 F.3d 683, 688 (7th Cir. 2013) (direct appeal).

Even if the language in the *Pinkerton* instruction were confusing, we would still affirm because any error would have been harmless. See *id.* at 691. Reyes was convicted of conspiracy, robbery, and brandishing. The trial evidence showed that he provided the gun and that it was in fact brandished during the robbery. No rational juror could have concluded that the gun was brandished in furtherance of only the conspirators' agreement to commit a robbery, but not in furtherance of the robbery itself, during which the gun was actually brandished. See *id.*

To counter this logic, Reyes argues that he was prejudiced because the evidence at trial of his continued participation in the conspiracy was flimsy and the use of the firearm was not foreseeable to him because he told the robbers he thought it was unnecessary. There is no logical connection between that prejudice theory and the alleged *Yates* instruction error, and

in fact they rest in considerable tension. According to Reyes' reading of the jury instructions, the jury was specifically asked to determine the exact questions that his prejudice theory claims went unaddressed. And, in any event, this separate sufficiency-of-the-evidence argument does not rely on *Johnson* and its progeny and could and should have been raised on direct appeal. See *Stanley v. United States*, 827 F.3d 562, 565 (7th Cir. 2016).

B.  *Procedural Arguments*

The government has asked us to affirm based on a supposed procedural error that might call into question our jurisdiction. We decline to do so because we see no error. That said, the government is correct that the case was procedurally messy, and not just because of Reyes' attempt at hybrid representation and numerous pro se filings. Both parties and the district court also had to contend with an emerging body of law whose direction was not always easy to predict. See, e.g., *Beckles*, 137 S. Ct. at 892 n.2. The district court did not clearly address each of Reyes' arguments in disposing of his § 2255 motion, and the government ironically failed to raise this jurisdictional challenge before the district court. Because of the convoluted path this case has taken, and fact that our subject matter jurisdiction is potentially at stake, we will address the government's theory.

The government argues that the district court lacked jurisdiction over Reyes' § 924(c) claim because he failed to obtain authorization from a panel of this court to bring a motion to amend his successive § 2255 motion. The textual hooks for this argument are § 2255(h), which requires movants to obtain appellate certification for any "second or successive motion," and the general statutory framework that sets a higher bar for

successive § 2255 motions. Cf. *Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999). In contrast, when reviewing Reyes' motion to add a new claim to his cleared § 2255 motion, we considered this a motion to amend, not a brand-new successive § 2255 motion.

The government offers no persuasive reason to depart from our practice of encouraging successive § 2255 movants who have already cleared appellate screening to bring any motions to amend before the district courts reviewing their respective applications. In this case, for example, we instructed: "To the extent Reyes wishes to amend or supplement his pending § 2255 motion, he should direct such a request to the district court."

Substantial precedent supports our instructions in this case. See, e.g., *United States v. MacDonald*, 641 F.3d 596, 615–17 (4th Cir. 2011) (remanding with instructions to consider claim not raised in successive application but added pursuant to Fed. R. Civ. P. 15); see also *Fuller v. United States*, 815 F.3d 112, 113 n.2 (2d Cir. 2016), citing *Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002) (acknowledging petitioners' ability to move to amend pursuant to Rule 15 and encouraging that tack where new § 2255 motion is filed before adjudication of authorized § 2255 motion is complete); *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (discussing intersection of § 2242, the Habeas Corpus Rules, and Fed. R. Civ. P. 81, and concluding that Rule 15 governs motions to amend in proceedings under § 2254).

This approach reflects the best reading of the statutory text and the framework for second and successive motions. Though the screening requirement is found in § 2255, the substantive and procedural requirements for our review are

found in § 2244, which requires: "Before a second or successive application … is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." § 2244(b)(3)(A). An appellate panel's jurisdiction over such screens is limited, and it cannot entertain certain post-screening motions. See § 2244(b)(3)(E).

By statutory design, our initial review of such an application must be quick and is unlikely to be deep. Rather than conducting a line-by-line review, we look to see if it "contain[s]" something—perhaps just one claim—worth looking into, and we do not revisit our prior decisions. §§ 2255(h); 2244(b)(3)(E). Briefing is limited, and we must review these orders quickly. See 7th Cir. R. 22.2(c); § 2244(b)(3)(D). Though our screening orders authorizing a successive motion may opine on the merits of various issues, neither the parties nor the district court should read too much into pronouncements that are not subject to review and do not conclusively resolve the case. See *Bennett v. United States*, 119 F.3d 468, 469–70 (7th Cir. 1997). As our colleagues in the Fourth Circuit have observed, after an applicant "has made a prima facie showing that his application satisfies § 2244(b)[]'s requirements," the screening panel "may not plod along any further," and the merits determination is up to the district court notwithstanding the screening panel's thoughts on the case. *In re Stevens*, 956 F.3d 229, 233–34 (4th Cir. 2020), citing among other cases *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

In contrast, district courts do the deeper dive. They must review each of the specific *claims* presented in approved applications, even where many of those distinct claims may lack merit or were obviously forfeited. Upon receipt of an

authorized application, the "district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." § 2244(b)(4). Nothing in this statutory structure, then, prevents a forfeited claim from landing on a district judge's desk so long as the application as a whole is accepted. On the contrary, the statute implicitly encourages that result.

Neither § 2244 nor § 2255 expressly limits a district court's power to permit amendment of a successive motion once the appellate court has screened the application and permitted its filing in the district court. If anything, the various allusions to amending an extant application sprinkled throughout the broader statute suggest that a subsequent motion to amend a standard successive § 2255 motion should not be subject to the screening requirement. See 28 U.S.C. § 2242 (allowing that an application "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). The capital habeas statute, by comparison, does limit an applicant's right to amend. See 28 U.S.C. § 2266(b)(3)(B) (movant challenging a death sentence may not amend original motion "except on the grounds specified in § 2244(b)").

Thus, § 2244, and by extension § 2255, require only that successive *applications*, and not amendments or even necessarily individual claims, be screened by an appellate panel. The purpose of the screen is "to limit multiple efforts to obtain collateral review." *Johnson*, 196 F.3d at 805. Once one claim has cleared that high hurdle, we do not dissect the application further.

The statute's flexibility in this procedural niche has practical advantages. Allowing petitioners and district courts

flexibility in amending successive § 2255 motions recognizes that unforeseen issues may arise and promotes judicial economy in resolving them without having to consult appellate panels that must turn screening questions around quickly and have circumscribed jurisdiction over such requests. We see no reason to break with our current practice and develop an elaborate ad hoc decision tree, unmoored from the statutory text, to determine which (frequently pro se) supplements and amendments need to be screened and which are subject to the normal Federal Rules of Civil Procedure that otherwise govern proceedings under § 2255. To the extent that § 2244's exacting standards might not prevent prisoners from inundating district courts with meritless motions to amend, courts can and should use their discretion under Rule 15 to prevent abusive or needlessly time-consuming tactics. See generally Fed. R. Civ. P. 1 (just, speedy, and inexpensive determinations).

To be sure, the government is correct that district courts entertaining successive § 2255 motions may not review certain claims even if they are meritorious. Yet that point only restates 28 U.S.C. § 2244(a) and (b)(1), (2), and (4), which in turn echo § 2255(h). Likewise, as we have said for years, district courts must be wary of movants who attempt to reframe a successive § 2255 motion as something else to circumvent the screening requirement. E.g. *Adams v. United States*, 911 F.3d 397, 403–04; 408 (7th Cir. 2018) (motion for relief from final judgment pursuant to Rule 60 was actually a successive § 2255 motion); *Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004) ("Call it a motion for a new trial, arrest of judgment, mandamus, prohibition, coram nobis, coram vobis, audita querela, certiorari, capias, habeas corpus, ejectment, quare

impedit, bill of review, writ of error, or an application for a Get-Out-of-Jail Card; the name makes no difference.").

These straightforward applications of the screening requirement and limitations on successive § 2255 motions are not relevant to this case. Reyes could not have brought his *Johnson*-based claims until after that case had been decided, and his successive motion was in fact screened. Perhaps, as the government implies, our suggestion that Reyes file his amendment in the district court could (with some imagination) have been interpreted as *requiring* district courts to consider the merits of any amendment to a second or successive § 2255 motion. But we did not say that, and such a requirement would run counter to the statute's text and structure and to the Federal Rules of Civil Procedure. Because Reyes' § 924(c) theory was unavailable before *Johnson* and *Davis*, it was not foreclosed by § 2244 or § 2255, and the district court did not err in entertaining it. See *In re Hammoud*, 931 F.3d 1032, 1041 (11th Cir. 2019) (authorizing a post-*Davis* claim regarding § 924(c)).

The government also argues that Reyes waited too long to flag the jury-instructions aspect of his statutory "crime of violence" claim. The main thrust of this argument, that the supposed fault in the jury instructions had not been raised until it was presented in Reyes' final motion for reconsideration, is belied by the fact that Reyes had been complaining about the jury instructions for years and the government knew it. See Dkt. 28 at 13–14 (government's response to Reyes' motion acknowledging that he based his *Johnson* theory in part on the instructions). Given that Reyes' claim fails on the merits, we see no need to delve any further into the district court record to determine whether Reyes' pro se supplements regarding

*Davis* properly preserved this issue, nor do we see any reason to think the veteran district judge abused his discretion in considering the merits of Reyes' supplements.

The judgment of the district court is AFFIRMED.